[Cite as *Pauley v. Circleville*, 2012-Ohio-2378.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

JEREMY PAULEY, et al.,

    Plaintiffs-Appellants,

                           :    Case No.   10CA31

    vs.                         :

CITY OF CIRCLEVILLE, et al.,       :          DECISION AND JUDGMENT
                                        ENTRY

    Defendants-Appellees.        :

_____

APPEARANCES:

COUNSEL FOR APPELLANTS:    W. Craig Bashein, Bashein & Bashein Co., L.P.A., Terminal Tower, 35th Floor, 50 Public Square, Cleveland, Ohio 44113, and Paul W. Flowers, Paul W. Flowers Co., L.P.A., Terminal Tower, 35th Floor, 50 Public Square, Cleveland, Ohio 44113, and George R. Oryshkewych, 5566 Pearl Road, Parma, Ohio 44129

COUNSEL FOR APPELLEES:    Patrick J. Deininger, Law Office of Douglas J. May, 625 Eden Park Drive, Suite 510, Cincinnati, Ohio 45202, and Robert Lynch, Kathleen M. Gaurente & Associates, 6150 Oak Tree Boulevard, Suite 450, Independence, Ohio 44131

_____

CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 5-23-12

PER CURIAM.

{¶ 1} This is an appeal from a Pickaway County Common Pleas Court summary judgment

in favor of the City of Circleville, defendant below and appellee herein.

{¶ 2} Jeremy and Christine Pauley, plaintiffs below and appellants herein, raise the

following assignment of error for review:

> "THE TRIAL JUDGE ERRED, AS A MATTER OF LAW, BY
> GRANTING SUMMARY JUDGMENT AGAINST
> PLAINTIFF[S]-APPELLANTS."

{¶ 3} On January 24, 2007, eighteen-year-old Jeremy Pauley tragically was rendered a quadriplegic while sledding with friends at Barthelmas park. He and his mother filed a negligence complaint and alleged that appellee "failed to fulfill [its] duty of inspecting the park and removing the physical defects which posed a hazard to the public. [Appellee] had further failed to warn the citizens using the park of the physical defects which were known, or should have been known, to be threatening their safety." Appellants alleged that "[t]he waste and debris which had been left on the grounds surrounding the public buildings created an inherently dangerous situation which no user of the park could have anticipated and thus substantially altered the nature and characteristic of the public property."

{¶ 4} On June 1, 2010, appellee requested summary judgment and argued that: (1) the recreational user statute relieves it of liability for Jeremy's injury; (2) Jeremy could not identify the unsafe condition that caused his injury; (3) it is entitled to political subdivision immunity under R.C. Chapter 2744; and (4) the assumption of the risk doctrine bars appellants' claims.

{¶ 5} Appellants opposed appellee's summary judgment motion and argued, in part, that the recreational user statute does not apply when the premises contain manmade mounds of construction debris that are not consistent with the recreational nature of the premises.

{¶ 6} In his deposition,[1] Jeremy stated that although he had previously visited the park, he

---

[1] The parties attached partial depositions to their respective filings, but the record contains nothing to indicate that the parties officially filed the full depositions. Because neither party has objected to the partial depositions attached to the filings, we consider them.

had never participated in snow sledding at the park before the day of the accident. He stated that after he "hit an immovable object," he went numb.

{¶ 7} Kevin Baisden, Jeremy's friend who went sledding with him, stated that when he first approached Jeremy after the accident, Baisden observed that the area was snow-covered. Thus, he did not notice any debris or anything that Jeremy may have hit. Baisden stated that he watched Jeremy go down the hill[2] and when asked if it looked like Jeremy struck something, Baisden stated: "Not really. I mean not even on the videotape, it didn't, I mean, that I recall. It didn't look like he hit something. It just looked like he went and just stopped toward the bottom of the hill. I mean, yeah, there were sticks and stuff there. I meant there–there was nothing to stop him stop him. [sic]" Baisden stated that he went back to the park after the accident and discovered that "there was a railroad tie—well, at least something that looked like a railroad tie."

{¶ 8} Circleville City employee Philip S. Riffle stated that appellee decided to place dirt piles at the park when it started to run out of room at the storage facility. He explained that the city used the dirt "for various things, backfill material. It was topsoil. Any areas that, like we do digging in, or we use it in various locations throughout the town. We use a lot of it there on the site, at the park for reseeding purposes."[3]

{¶ 9} Dane Patterson, Jr., another city employee, stated that appellee obtained the dirt from

---

[2]The "hill" mentioned here and throughout the opinion was described at oral argument as a mound of dirt approximately fifteen feet tall with a diameter of approximately twenty feet. This structure or object is also referred to as a "mound," a "pile" and a "dirt pile."

[3]Riffle, when asked about the purpose of the dirt pile, stated that it is also used for backfill for other areas of town: "Well, we'll dig out old curbs, pour new curbs, so you'll need topsoil to put back in the curb and reseed. You know, like, storm sewer repairs, sometimes we make large holes, and we usually just haul off a lot of the junk material and put the good topsoil back in."

a Wal-Mart construction site.   Like Riffle, Patterson also explained that appellee ran out of room

at its storage facility, is was decided to store the dirt at the park.

{¶ 10} On August 23, 2010, the trial court awarded appellee summary judgment.   The

court determined that no genuine issues of material fact remained as to whether appellee is entitled

to recreational user immunity.   This appeal followed.

{¶ 11} In their sole assignment of error, appellants assert that the trial court improperly

entered summary judgment in appellee's favor.   They contend that the trial court wrongly

determined that appellee is entitled to immunity under the recreational user statute, R.C. 1533.181.

I

STANDARD OF REVIEW

{¶ 12} Appellate courts conduct a de novo review of trial court summary judgment

decisions.   E.g., Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

Accordingly, an appellate court must independently review the record to determine if summary

judgment is appropriate and need not defer to the trial court's decision.   See Brown v. Scioto Bd.

of Commrs., 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (1993); Morehead v. Conley, 75 Ohio

App.3d 409, 411-12, 599 N.E.2d 786 (1991).   Thus, to determine whether a trial court properly

granted a summary judgment motion, an appellate court must review the Civ.R. 56 summary

judgment standard, as well as the applicable law.

{¶ 13} Civ. R. 56(C) provides, in relevant part, as follows:

* * * Summary judgment shall be rendered forthwith if the pleadings, depositions,
answers to interrogatories, written admissions, affidavits, transcripts of evidence in
the pending case, and written stipulations of fact, if any, timely filed in the action,
show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶ 14} Thus, pursuant to Civ.R. 56, a trial court may not award summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and after viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall, 77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164 (1997).

II

RECREATIONAL USER IMMUNITY

{¶ 15} Appellants assert that the trial court wrongly determined that appellee is entitled to immunity under the recreational user statute. Although appellants admit that Jeremy was a "recreational user," appellants assert that appellee is not entitled to immunity under the statute when the cause of Jeremy's injury (i.e., the alleged railroad tie) had no relation to the recreational nature of the premises. They further argue that appellee's storage of the dirt mounds on the park premises changed the nature of the premises and put the premises outside the protection of the recreational user immunity statute.

{¶ 16} Immunity issues ordinarily present questions of law that an appellate court reviews independently and without deference to the trial court. See Conley v. Shearer, 64 Ohio St.3d 284,

292, 595 N.E.2d 862 (1992), quoting <u>Roe v. Hamilton Cty. Dept. Of Human Serv.</u>, 53 Ohio

App.3d 120, 126, 560 N.E.2d 238 (1988) (citation omitted) ("'Whether immunity may be invoked

is a purely legal issue, properly determined by the court prior to trial, and preferable on a motion

for summary judgment.'"); see, also, <u>Hubbell v. Xenia</u>, 115 Ohio St.3d 77, 2007-Ohio-4839, 873

N.E.2d 878, ¶21 (stating that whether political subdivision entitled to immunity under R.C.

Chapter 2744 is a question of law); see, also, <u>Theobald v. Univ. of Cincinnati</u>, 111 Ohio St.3d 541,

2006-Ohio-6208, 857 N.E.2d 573, ¶14 (stating that issue of personal immunity under R.C. 9.86

presents question of law); <u>Greenwald v. Shayne</u>, Franklin App. No. 09AP-599, 2010-Ohio- 413,

¶4 (stating that whether party entitled to arbitral immunity is a question of law); <u>Cook v.</u>

<u>Cincinnati</u>, 103 Ohio App.3d 80, 85, 658 N.E.2d 814 (1995) (stating that whether qualified

immunity applies is a question of law).   Thus, whether a premises owner is entitled to recreational

user immunity is a question of law.[4]


　　　　　**{¶ 17}** The recreational user statute, R.C. 1533.181, states:

> 　　　(A) No owner, lessee, or occupant of premises:
> 　　　(1) Owes any duty to a recreational user to keep the premises safe for entry
> or use;
> 　　　(2) Extends any assurance to a recreational user, through the act of giving
> permission, that the premises are safe for entry or use;
> 　　　(3) Assumes responsibility for or incurs liability for any injury to person or
> property caused by any act of a recreational user.
> 　　　(B) Division (A) of this section applies to the owner, lessee, or occupant of
> privately owned, nonresidential premises, whether or not the premises are kept
> open for public use and whether or not the owner, lessee, or occupant denies entry
> to certain individuals.

---

[4]   Although we were unable to locate a case that specifically sets forth the standard of review that applies to recreational user immunity, we observe that most of the cases cited in this opinion appear to use a de novo standard of review without expressly stating so.

R.C. 1533.181.

{¶ 18} R.C. 1533.181 applies to "all privately owned lands, ways, and waters, and any buildings and structures thereon, and all privately owned and state-owned lands, ways, and waters leased to a private person, firm, or organization, including any buildings and structures thereon." R.C. 1533.18(A).   The Ohio Supreme Court has further construed the statute to apply to state and municipal property.   See LiCause v. City of Canton, 42 Ohio St.3d 109, 111-112, 537 N.E.2d 1298 (1989), citing Moss v. Dept. of Natural Resources, 62 Ohio St.2d 138, 404 N.E.2d 742 (1980), and McCord v. Division of Parks & Rec., 54 Ohio St.2d 72, 375 N.E.2d 50 (1978).

{¶ 19} R.C. 1533.18(B) defines a "recreational user" as follows:

> [A] person to whom permission has been granted, without the
> payment of a fee or consideration to the owner, lessee, or occupant
> of premises, other than a fee or consideration paid to the state or any
> agency of the state, or a lease payment or fee paid to the owner of
> privately owned lands, to enter upon premises to hunt, fish, trap,
> camp, hike, or swim, or to operate a snowmobile, all-purpose
> vehicle, or four-wheel drive motor vehicle, or to engage in other
> recreational pursuits.

Thus, if a person qualifies as a recreational user, the premises owner has no duty to the recreational user to keep the premises safe.   Ryll v. Columbus Fireworks Display Co., Inc., 95 Ohio St.3d 467, 2002-Ohio-2584, 769 N.E.2d 372, ¶15; Estate of Finley v. Cleveland Metroparks, 189 Ohio App.3d 139, 152, 2010-Ohio-4013, 937 N.E.2d 645, ¶54; accord Marrek v. Cleveland Metroparks Bd. of Com'rs, 9 Ohio St.3d 194, 198, 459 N.E.2d 873 (1984).

{¶ 20} In the case at bar, appellants concede in their reply brief that "there is no dispute that * * * [Jeremy] qualified as a 'recreational user.'"   Therefore, appellee is entitled to recreational user immunity.   Appellants nevertheless assert that even though Jeremy qualified as a recreational user, the recreational user statute does not apply when the premises owner creates a hazardous condition on the premises.   Appellants request, in essence, that we read an exception into the statute when none exists.   We decline to do so.

{¶ 21} The Eighth District Court of Appeals has rejected any argument that the recreational user statute contains an exception from immunity when a dangerous condition exists on the premises, Milliff v. Cleveland Metroparks Sys., Cuyahoga App. No. 52315 (June 4, 1987), and we do as well.[5]   In Milliff, the plaintiff suffered injuries when she collided with a rock barrier that was used to block access to a washed out area of the park.   The plaintiff argued that the recreational user statute did not protect the defendant from liability when the defendant affirmatively created a dangerous condition.   The appellate court rejected the plaintiff's argument and explained:

> " * * * This court has already determined that the creation of hazardous conditions does not change the determinative factor, i.e., whether the plaintiff was a recreational user.
>          It is clear that appellant did not pay a fee or consideration for admission or entrance to the Metropark.   Appellant testified that she entered the Metropark to take a 'casual, leisurely bicycle' ride.   We conclude that a bicycle ride is a recreational pursuit within the meaning of R.C. 1533.18(B).
>          Appellant's status was one of a recreational user and as a result the
>
> Metroparks owed her no duty to keep the premises safe. * * * Further, we hold that

---

[5]   Some Court of Claims decisions also have reached this same conclusion.     Shockey v. Ohio Dept. of Natural Resources, Ohio Court of Claims No. 2004-09509-AD, 2005-Ohio-641, ¶11 ("Even if defendant's conduct would be characterized as 'affirmative creation of hazard,' it still has immunity from liability under the recreational user statute."); Meiser v. Ohio Dept. of Natural Resources, Ohio Court of Claims No. 2003-10392-AD, 2004-Ohio-2097.

the recreational users' statute does not contemplate a distinction between what

appellant terms as passive and active negligence.   The statute protects all owners

of land who fall within it from all acts of negligence.   Its application simply turns

on the status of the plaintiff."

Milliff (citations omitted); see, also, Erbs v. Cleveland Metroparks Sys., Cuyahoga App. No.

53247 (Dec. 24, 1987).

{¶ 22} The court reached the same conclusion in Look v. Cleveland Metroparks Sys., 48

Ohio App.3d 135, 137, 548 N.E.2d 966 (1988).   In Look, the plaintiff suffered injuries when a

wood plank in a footbridge collapsed, causing him to fall into a ravine.   The plaintiff asserted that

the defendant failed to properly maintain the bridge.   The court rejected the plaintiff's argument

that the recreational user statute did not apply when the defendant created a dangerous condition.

The court explained:

"* * * R.C. 1533.181 makes no distinction between active and passive

negligence.   The creation of a hazardous condition does not change the

determinative factor of [the plaintiff]'s status as a recreational user.   As such,

Metroparks owed no duty to [the plaintiff] to keep the footbridge safe."

(Citations omitted).

{¶ 23} In Estate of Finley v. Cleveland Metroparks Sys., 189 Ohio App.3d 139,

2010-Ohio-4013, 937 N.E.2d 645, Finley and his wife's motorcycle collided with a tree that had

fallen into the roadway of a park.   Finley suffered injuries and his wife died.   Finley and his

wife's estate later filed a negligence action against the city and the park.   The city and the park

subsequently sought summary judgment.   The trial court denied their summary judgment

motions, and the appellate court reversed the trial court's judgment. The appellate court held that the recreational user statute provided the park[6] with immunity. The court determined that the Finleys were recreational users when the evidence indicated that they were enjoying a leisurely ride through the park when the accident occurred.

{¶ 24} In the present case, appellants have admitted that Jeremy was at the park for sledding and that he was a recreational user. There is no dispute that Jeremy was using the mound for purely recreational purposes. Thus, because he was a recreational user, appellee owed him no duty to keep the premises safe. The statute provides blanket immunity for injuries that occur to a recreational user on the premises. Here, the use of the mound for a recreational purpose did not change the essential character of the park.

{¶ 25} When defining who qualifies as a recreational user, the statute focuses upon the character of the property and the use to which it is put. Miller v. Dayton, 42 Ohio St.3d 113, 537 N.E.2d 1294 (1989), paragraph one of the syllabus. As the Miller court explained: "In determining whether a person is a recreational user under R.C. 1533.18(B), the analysis should focus on the character of the property upon which the injury occurs and the type of activities for which the property is held open to the public." Id. If the property's essential character is recreational, then a user of that property will ordinarily be a recreational user. Id. at 114-115. In seeking to define recreational premises, the Miller court explained:

> "Generally speaking, recreational premises include elements such as land, water, trees, grass, and other vegetation. But recreational premises will often have such features as walks, fences and other improvements. The significant query is whether such improvements change the character of the premises and put the

---

[6] The appellate court determined that the plaintiffs' claims against the city were time-barred and, thus, did not enter any holding regarding the city's immunity.

property outside the protection of the recreational-user statute. To consider the question from a different perspective: Are the improvements and man-made structures consistent with the purpose envisioned by the legislature in its grant of immunity? In other words, are the premises (viewed as a whole) those which users enter upon '* * * to hunt, fish, trap, camp, hike, swim, or engage in other recreational pursuits?"

Id. at 114-115.

{¶ 26} The parties also argue the applicability of Ryll v. Columbus Fireworks Display Co., Inc., 95 Ohio St.3d 467, 2002-Ohio-2584, 769 N.E.2d 372. Appellants suggest that under the Ryll logic, the recreational user statute does not bar their claims. In Ryll, the court determined that the recreational user statute did not bar an injured party's claim when the injury occurred, not as a result of a condition on the premises, but as a result of flying shrapnel from a fireworks display. Ryll is inapposite to the case sub judice. Here, Jeremy's injury did not occur from a flying object. Instead, his injury resulted from some condition, whether a railroad tie or some other object, that existed on the premises. Thus, appellants' assertion that Ryll removes Jeremy's injury from the recreational user statute is unavailing. While the instant case is undeniably tragic, we cannot disregard the law in order to allow appellants' claims to proceed.

{¶ 27} Accordingly, based upon the foregoing reasons, we overrule appellants' assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.


ABELE, P.J., dissenting

{¶ 28} I respectfully dissent. In this instance, I do not believe that the recreational user statute provides the premises owner with immunity from liability for an injury that occurred to a user as a result of the premises owner's active creation of a hazard that had absolutely nothing to

do with the recreational nature of the premises.

{¶ 29} Although appellants concede that Jeremy was a recreational user, thus potentially foreclosing their ability to argue that the addition of the dirt mounds changed the character of the property, I believe that Miller is not necessarily as limited as the majority suggests. Miller speaks in terms of defining a recreational user by examining the character of the property, yet it also speaks of the premises being protected under the recreational user statute. The court stated: "To qualify for recreational-user immunity, property need not be completely natural, but its essential character should fit within the intent of the statute." Id. at 114. The court further defined recreational premises and explained:

> "Generally speaking, recreational premises include elements such as land, water, trees, grass, and other vegetation. But recreational premises will often have such features as walks, fences and other improvements. The significant query is whether such improvements change the character of the premises and put the property outside the protection of the recreational-user statute. To consider the question from a different perspective: Are the improvements and man-made structures consistent with the purpose envisioned by the legislature in its grant of immunity? In other words, are the premises (viewed as a whole) those which users enter upon '* * * to hunt, fish, trap, camp, hike, swim, or engage in other recreational pursuits?"

Id. at 114-115.

{¶ 30} The court then examined prior cases that explained what types of activities constitute "other recreational pursuits." The court then noted a caveat to the cases defining recreational pursuits and stated:

> "The existence of statutory immunity does not depend upon the specific activity pursued by the plaintiff at the time of the plaintiff's injury. Rather, the inquiry should focus on the nature and scope of activity for which the premises are held open to the public. The goal is to determine the character of the premises. If the premises qualify as being open to the public for recreational activity, the statute does not require a distinction to be made between plaintiffs depending upon the activity in which each was engaged at the time of injury. For example, we

> recognize immunity to the owner of a park (which qualifies as recreational premises), whether the injury is to one who is jogging in the park, tinkering with a model airplane or reading poetry to satisfy a school homework assignment. Thus we attach no significance to the fact that Miller's injury may have occurred during a highly competitive softball tournament. The essential character of Dayton's Kettering Field is that of premises held open to the plaintiff, without fee, for recreational purposes."

Id. at 115 (emphasis added).

{¶ 31} The <u>Miller</u> court applied the foregoing principles and determined that premises do not lose recreational user immunity simply "because (1) the park includes a softball field with dugouts, fences, base plates and similar manmade structures * * *." Id. at 115. The court reasoned that because the manmade structures enhanced the recreational nature of the premises, the plaintiff, a user of those premises, was a recreational user.

{¶ 32} I believe that <u>Miller</u> not only defines who qualifies as a recreational user, but also defines the type of property that falls within the definition of premises within the recreational user statute.

{¶ 33} In <u>Huffman v. Willoughby</u>, Lake App. No. 2007-L-040, 2007-Ohio-7120, the court applied the <u>Miller</u> principles and affirmed the trial court's decision to deny the city's motion to dismiss the complaint. In <u>Huffman</u>, the complaint alleged that the plaintiffs drowned while rafting down a river toward a dam. They asserted that the dam was built for purposes that the dam no longer serves and has not served for quite some time. The city filed a motion to dismiss the complaint. In opposition to the city's motion, the plaintiffs argued that the city's placement of a lowhead dam in the river changed the nature of the river such that the recreational user statute did not apply. The trial court agreed that the construction of the dam changed the character of the part of the river where the dam was located. The trial court determined that the dam was not

constructed to encourage the recreational use of this part of the river.   Id. at ¶9.   Instead, the court

found that the dam was inherently dangerous and was not suitable for recreational use.

{¶ 34} On appeal, the court framed the issue as whether the face of the complaint showed

that the recreational user statute barred the plaintiffs' claims.   The appellate court looked to the

complaint and concluded that it failed to show that the decedents had permission to enter the area

where the dam was located.   The court therefore determined that the city was not entitled to a

dismissal based upon the recreational user statute.   The court further noted that the complaint

alleged that the premises were inherently dangerous and exposed any user to the risk of imminent

death.   It thus concluded that the plaintiffs "were entitled to the reasonable inference that the dam

was not installed for recreational pursuits."   Id. at ¶49.

{¶ 35} I believe that an application of Miller and Huffman results in the conclusion that in

the case sub judice appellee is not entitled to recreational user immunity.   Here, appellee added an

unnatural structure to the park premises–the dirt mounds.   Appellee's stated purpose in placing

the dirt mounds on the park premises was because it had no space to store the dirt at its storage

facility.   Appellee has not suggested that it added the dirt mounds to enhance the recreational

nature of the property.   Thus, I believe that the addition of the dirt mounds transformed the

character of that part of the park premises from recreational to storage and maintenance.[7]

---

[7] One case that went before the Ohio Supreme Court involved similar facts.   See Sorrel v. Ohio Dept. Of Natural Resources, Division of Parks and Rec., 40 Ohio St.3d 141, 532 N.E.2d 722 (1988).   In Sorrel, the Ohio Department of Natural Resources (ODNR) engaged in dredging operations on a lake.   ODNR apparently left a mound of dirt on the surface of the lake.   The plaintiff suffered injuries when the snowmobile he was riding struck the dirt mound.   The plaintiff subsequently sued ODNR.   On appeal to the supreme court, the court determined that the plaintiff was a recreational user and that ODNR was therefore entitled to immunity.

Interestingly, the plaintiff had requested the Ohio Supreme Court to consider "whether the statutory immunity would apply where injuries are caused by artificial and willfully created hazards, such as the mound of dredge material herein."   Id. at

{¶ 36} Furthermore, granting appellee immunity under these circumstances does not appear consistent with the goal of the recreational user statute.

> "Statutory immunity for landowners in this situation promotes the
> development and availability of property for recreational use and is consistent with
> the public policy reflected in R.C. 1533.181.   According to <u>Moss</u>, supra, the
> purpose of the statute is '"to encourage owners of premises suitable for recreational
> pursuits to open their land to public use without worry about liability."'   Id., 62
> Ohio St.2d at 142, 404 N.E.2d 742[, quoting <u>Moss</u>, (Feb. 6, 1979), Franklin App.
> Nos. 78AP-578, 78AP-579]."

<u>Marrek v. Cleveland Metroparks Bd. of Com'rs</u>, 9 Ohio St.3d 194, 198, 459 N.E.2d 873 (1984). To allow immunity when a premises owner chooses to use part of recreational premises as a dirt storage facility does not fulfill the purpose of encouraging a recreational premises owner to open the land to the public for recreational use without fear of liability.   The purpose of the statute is not to encourage landowners to use their what-would-otherwise-be recreational property as a storage facility and then be shielded behind the recreational user statute when a person suffers injury from the addition of this non-recreational aspect of the premises.

{¶ 37} I recognize that appellee states in its brief that appellants "cannot show that the dirt mound changed the character of Barthelmas Park."   Appellee does not elaborate on this

---

142, fn.1.   The supreme court, however, found that the plaintiff failed to raise this argument in the lower courts and thus, declined to consider this argument.     Instead, the court considered and rejected the plaintiff's argument that the recreational user statute did not apply because he was snowmobiling during a prohibited time period and thus using the park without permission.     The court explained:     "The immunity granted by R.C. 1533.181 to owners, lessees, or occupants of premises who hold such premises open for gratuitous recreational use by the general public can not be lost where a person violates state park rules and regulations while using a park for permitted, gratuitous recreation purposes."     Id. at 144-145.

statement.   I believe, however, that the evidence the parties submitted during the summary

judgment proceedings does indeed show that the dirt mounds changed the character of the park.

Appellee's employees stated that the dirt mounds were placed on the park premises for storage

purposes.   No one stated that the dirt mounds were placed on the park premises for sledding or

other recreational pursuits.   Thus, I believe that the evidence supports a conclusion that the

addition of the dirt mounds changed the essential character of the premises where Jeremy suffered

his injuries.

{¶ 38} Additionally, as the party moving for summary judgment, appellee bore the burden

to point to evidence in the record to establish the absence of a material fact regarding whether the

addition of the dirt mounds changed the essential character of the park.   See Dresher v. Burt, 75

Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); Ray v. Wal-Mart, Washington App. No. 08CA41,

2009-Ohio-4542, 17.   As the Dresher court explained:

> "[A] party seeking summary judgment, on the ground that the nonmoving
>
> party cannot prove its case, bears the initial burden of informing the trial court of
>
> the basis for the motion, and identifying those portions of the record that
>
> demonstrate the absence of a genuine issue of material fact on the essential
>
> element(s) of the nonmoving party's claims.   The moving party cannot discharge
>
> its initial burden under Civ.R. 56 simply by making a conclusory assertion that the
>
> nonmoving party has no evidence to prove its case.   Rather, the moving party must
>
> be able to specifically point to some evidence of the type listed in Civ.R. 56(C)
>
> which affirmatively demonstrates that the nonmoving party has no evidence to
>
> support the nonmoving party's claims.   If the moving party fails to satisfy its

initial burden, the motion for summary judgment must be denied."

Id.   In the case at bar, appellee has not pointed to any evidence to show the absence of a material fact regarding whether the dirt mounds changed the essential character of the premises.   Instead, appellee has offered a conclusory assertion that appellants cannot demonstrate this fact. Appellee's conclusory assertion is not sufficient to warrant summary judgment.

{¶ 39} Furthermore, I disagree with the majority's view of <u>Milliff</u>, <u>Look</u>, and <u>Finley</u>.   In those cases, the alleged negligently created hazard did not change the essential character of the premises.   In the case at bar, however, the hazard–the dirt mounds–did change the character of the premises.

{¶ 40} Therefore, based upon the foregoing reasons, I believe that the trial court improperly determined that appellee is entitled to recreational user immunity and, thus, wrongly granted appellee summary judgment on this basis.   Accordingly, I respectfully dissent.

<u>JUDGMENT ENTRY</u>

It is ordered that the judgment be affirmed and that appellee recover of appellants the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & McFarland, J.: Concur in Judgment & Opinion
Abele, P.J.: Dissents with Dissenting Opinion

For the Court

BY:_____

Peter B. Abele
Presiding Judge

BY:_____

William H. Harsha, Judge

BY:_____

Matthew W. McFarland, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.