[Cite as *Kearns v. Meigs Cty. Emergency Med. Servs.*, 2017-Ohio-1354.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | | |
|---|---|---|
| CHARLES P. KEARNS, SR., | : | |
| | : | Case No. 16CA8 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | |
| | : | |
| MEIGS COUNTY EMERGENCY | : | |
| MEDICAL SERVICES, et al., | : | |
| | : | |
| Defendants-Appellants. | : | |

| | | |
|---|---|---|
| ELEANOR F. KEARNS, | : | |
| | : | Case No. 16CA9 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | |
| | : | |
| MEIGS COUNTY EMERGENCY | : | |
| MEDICAL SERVICES (EMS), et al., | : | |
| | : | |
| Defendants-Appellants. | : | |

DECISION AND JUDGMENT ENTRY

RELEASED 04/05/2017

APPEARANCES:

Mark Landes and Aaron M. Glasgow, Isaac Wiles Burkholder & Teetor, LLC, Columbus, Ohio, for defendants-appellants.

Jeffrey L. Finley, Gallipolis, Ohio, for plaintiffs-appellees.

Hoover, J.

{¶ 1} Defendants-appellants, Meigs County Commissioners, Meigs County Emergency Medical Services ("Meigs County EMS"), and Alfred W. Lyons, appeal from a judgment of the Gallia County Common Pleas Court that denied their motion for summary judgment in the personal injury actions filed by plaintiffs-appellees, Charles and Eleanor Kearns. The complaints[1] stemmed from an incident where an ambulance operated by Meigs County EMS/Meigs County Commissioners and driven by Lyons struck the vehicle occupied by Charles and Eleanor Kearns on a roadway in Gallia County, Ohio. The appellants moved for summary judgment claiming a defense or immunity under R.C. Chapter 2744. The trial court denied the motion on the ground that a genuine issue of material fact exists regarding whether appellant Lyons's actions constitute wanton misconduct. After a careful review of the record and applicable law, we conclude that the trial court properly denied the appellants' motion for summary judgment; and therefore, we affirm.

### I. Facts and Procedural Posture

{¶ 2} This case arises out of an automobile collision involving a vehicle driven by Charles Kearns and occupied by Eleanor Kearns and an ambulance operated by Meigs County EMS/Meigs County Commissioners and driven by Lyons. On the evening of March 23, 2013, Meigs County EMS received a 911 call from the Holzer Clinic urgent care facility in Pomeroy, Ohio. Holzer Clinic requested that an ambulance be sent to its facility to treat a patient experiencing a medical emergency, and to transport the patient to the Holzer Medical Center in

---

[1] Charles and Eleanor Kearns filed separate complaints against the appellants, but because the actions arose from the same incident and alleged the same claims, they were consolidated below for the purposes of filing dispositive motions with respect to liability issues. The cases have also been consolidated in this Court by magistrate's order dated July 12, 2016.

Gallipolis, Ohio. A Meigs County EMS ambulance, driven by employee Lyons[2], responded to Holzer Clinic. Accompanying Lyons to Holzer Clinic was his partner Teresa Johnson. In the trip from the station house in Racine, Ohio, to the Holzer Clinic in Pomeroy, Lyons drove the ambulance with lights and sirens activated.

{¶ 3} Upon arriving at Holzer Clinic, Lyons and Johnson spoke with the staff about the patient's condition, and within five minutes the patient was loaded into the ambulance. Lyons and Johnson determined that the patient was not in such critical condition that it was necessary to proceed to the Holzer Medical Center with lights and sirens activated. Lyons then drove the ambulance towards Holzer Medical Center to take the patient to the emergency room for medical care.

{¶ 4} The collision occurred while en route to Holzer Medical Center on State Route 7 in the Village of Cheshire, Ohio.[3] The ambulance was proceeding southbound on State Route 7 prior to the collision. While travelling in the southbound direction, the ambulance drove left of center and struck the vehicle that the Kearns were riding in the northbound lane. At his deposition, Lyons testified that just before the collision, the two vehicles in front of him were playing a "brake check" game, erratically slowing down and speeding up. However, Lyons did not report any such "brake check" game to the highway patrol when asked how the collision occurred. Lyons could not recall the moments before the collision, saying he "lost everything", but recalled that when he "got [his] senses back", the Kearns' vehicle "was there" and he was completely in the northbound lane of travel. He tried to avoid the collision but was unable to do so. Lyons explicitly denied that he was attempting to pass the vehicle in front of him at the time

---

[2] Lyons indicated that he was an EMT-I (intermediate) and was employed by Meigs County EMS at the time of the incident.
[3] It is undisputed that the collision occurred in Gallia County, Ohio.

of the collision. Charles and Eleanor Kearns were both injured in the collision and taken to Holzer Medical Center for treatment.

{¶ 5} Charles Kearns recalls a different version of events. Charles Kearns testified that he observed a vehicle in front of the ambulance traveling south on State Route 7. According to Charles Kearns, Lyons accelerated and drove the ambulance completely into the northbound lane and passed the vehicle in front of him. After passing the vehicle in front of him, Lyons collided with the Kearns' vehicle head-on. Charles Kearns indicated that he had no time to avoid the collision.

{¶ 6} Michelle Folmer was driving a 2003 Honda Odyssey minivan and was following behind the Kearns' vehicle at the time of the collision. In fact, the force of the collision caused the Kearns' vehicle to spin around and be pushed backward into the vehicle driven by Folmer. Folmer averred in an affidavit filed during the summary judgment proceedings that at the intersection of West Poplar Street, Second Street, and State Route 7, she witnessed the ambulance driven by Lyons cross the left centerline into the northbound lane in an apparent attempt to pass the vehicle in front of him. She further averred that the ambulance was in the northbound lane of State Route 7 when it collided head-on with the Kearns' vehicle. She also confirmed that the ambulance did not have its emergency lights and sirens on at the time of the collision.

{¶ 7} The roadway where the collision occurred is a two-lane road with one lane of traffic for each direction. The posted speed limit where the collision occurred is 35 miles per hour. Solid double yellow lines indicating a no passing zone separated the northbound and southbound lanes where the collision occurred.

{¶ 8} The collision occurred at approximately 7:30 p.m., and according to Charles Kearns it was not yet dark outside. Charles and Eleanor Kearns were riding in a blue 2000 Mercury Grand Marquis. Charles was driving the vehicle and Eleanor was seated in the front passenger seat.

{¶ 9} Lyons indicated that he had not received formal training on: (1) the use of the lights and siren, (2) driving and operating the ambulance, and (3) when it would be appropriate to exceed the speed limit. However, he indicated that he did participate in ride-along training with more experienced employees; and had been a full-time employee with Meigs County EMS since 1995.

{¶ 10} The summary judgment evidence also included an affidavit and report from the Kearns' accident reconstruction expert. According to the accident reconstructionist, Lyons was traveling at a minimum speed of between 55-58 miles per hour at the time of the collision with the Kearns' vehicle, and was approaching an intersection in a posted 35 miles per hour speed zone. The reconstructionist also opined that Lyons's movement of the ambulance from the south lane of State Route 7 to the north lane was not a gradual movement, but rather an abrupt lane change; and was done either in an attempt to pass the vehicle in front of it, or as a swerving maneuver to the left to avoid a rear end collision with the vehicle in front of it.

{¶ 11} As previously mentioned, Charles and Eleanor Kearns filed separate civil suits against the appellants for personal injuries resulting from the collision. The complaints alleged that (1) Lyons was negligent in the operation of the ambulance; and (2) Lyons's actions, conduct, and omissions constituted willful and wanton misconduct. Finally, Charles and Eleanor Kearns alleged that Meigs County EMS and the Meigs County Commissioners were vicariously liable

for Lyons's actions and conduct. The parties each filed motions for summary judgment; as well as responses and replies. An oral hearing on the summary judgment motions was held on May 12, 2016.

{¶ 12} On June 6, 2016, the trial court issued its judgment on the pending summary judgment motions. The trial court denied the Kearns' motion in its entirety. As to the appellants' motion, the trial court granted summary judgment as to the issue of Lyons's conduct being willful and as to the issue of whether Lyons was on an emergency call at the time of the collision. However, the trial court found there to be a genuine issue of material fact as to whether Lyons's conduct was "wanton". Finally, though the parties had addressed the issue of recklessness with respect to Lyons's conduct in their competing summary judgment motions, the trial court refused to address the issue on the basis that it was not adequately pleaded in the Kearns' complaints.

{¶ 13} On June 7, 2016, both Eleanor and Charles Kearns moved to amend their complaints to plead reckless misconduct on the part of Lyons. The trial court granted the motions to amend on June 28, 2016. On June 30, 2016, both Eleanor and Charles Kearns filed amended complaints asserting reckless misconduct on the part of Lyons. On July 1, 2016, the appellants filed their notice of appeal of the June 6, 2016 judgment regarding the summary judgment motions.[4] Charles or Eleanor Kearns did not file a cross-appeal as to any portion of the trial court's judgment.

---

[4] Ordinarily, a decision denying a party's motion for summary judgment is not a final, appealable order. However, under R.C. 2744.02(C), "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."

## II. Assignment of Error

{¶ 14} On appeal, the appellants raise the following assignment of error for our review.

Assignment of Error:

> The Trial Court erred in finding that a genuine issues (sic) of material fact regarding whether Appellant Alfred W. Lyons acted "wantonly" under R.C. § 2744.02(B)(1)(a)[5].

## III. Law and Analysis

{¶ 15} Appellants contend that the trial court erred by denying their motion for summary judgment for the claims associated with the collision because they are entitled to the defenses and immunities under R.C. Chapter 2744. Specifically, the appellants argue that under the provided record, there is not enough evidence for a reasonable jury to find that Lyons acted wantonly or recklessly.

## A. Standard of Review

{¶ 16} We review the trial court's decision on a motion for summary judgment de novo. *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12. Accordingly, we afford no deference to the trial court's decision and independently review the record and the inferences that can be drawn from it to determine whether summary judgment is appropriate. *Harter v. Chillicothe Long-Term Care, Inc.*, 4th Dist. Ross No. 11CA3277, 2012-Ohio-2464, ¶ 12; *Grimes v. Grimes*, 4th Dist. Washington No. 08CA35, 2009-Ohio-3126, ¶ 16.

---

[5] While appellants' assignment of error identifies R.C. 2744.02(B)(1)(a) as the prevailing statute, as discussed in this decision and judgment entry, the actual pertinent sections appear to be R.C. 2744.02(B)(1)(c) and R.C. 2744.03(A)(6)(b).

{¶ 17} Summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *DIRECTV, Inc. v. Levin*, 128 Ohio St.3d 68, 2010-Ohio-6279, 941 N.E.2d 1187, ¶ 15. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the nonmoving party's favor.  Civ.R. 56(C). The party moving for summary judgment bears the initial burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). To meet its burden, the moving party must specifically refer to "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); *Dresher* at 293. Moreover, the trial court may consider evidence not expressly mentioned in Civ.R. 56(C) if such evidence is incorporated by reference in a properly framed affidavit pursuant to Civ.R. 56(E). *Discover Bank v. Combs*, 4th Dist. Pickaway No. 11CA25, 2012-Ohio-3150, ¶ 17; *Wagner v. Young*, 4th Dist. Athens No. CA1435, 1990 WL 119247, *4 (Aug. 8, 1990). Once that burden is met, the nonmoving party then has a reciprocal burden to set forth specific facts to show that there is a genuine issue for trial. *Dresher* at 293; Civ.R. 56(E).

### B. Meigs County EMS and Meigs County Commissioners

{¶ 18} R.C. 2744.02(A)(1) sets forth the general rule that a political subdivision is immune from tort liability for acts or omissions connected with governmental or proprietary functions. *See, e.g., Cramer v. Auglaize Acres,* 113 Ohio St.3d 266, 2007–Ohio–1946, 865

N.E.2d 9, ¶ 14*; Colbert v. Cleveland,* 99 Ohio St.3d 215, 2003–Ohio–3319, 790 N.E.2d 781, ¶ 7.

The statute states: "Except as provided in division (B) of this section, a political subdivision is

not liable in damages in a civil action for injury, death, or loss to person or property allegedly

caused by any act or omission of the political subdivision or an employee of the political

subdivision in connection with a governmental or proprietary function." However, R.C.

2744.02(B)(1) sets forth an exception to the general rule of immunity, providing that "political

subdivisions are labile for injury, death, or loss to persons or property caused by the negligent

operation of any motor vehicle by their employees when the employees are engaged within the

scope of their employment and authority." Finally, R.C. 2744.02(B)(1)(c) provides a political

subdivision with a full defense to the liability imposed under R.C. 2744.02(B)(1) if the liability

arose in connection with the negligent operation of a motor vehicle by "[a] member of an

emergency medical service owned or operated by a political subdivision * * * while responding

to or completing a call for emergency medical care or treatment, the member was holding a valid

commercial driver's license issued pursuant to Chapter 4506. or a driver's license issued

pursuant to Chapter 4507. of the Revised Code, the operation of the vehicle did not constitute

willful or wanton misconduct, and the operation complie[d] with the precautions of section

4511.03[6] of the Revised Code."

{¶ 19} In the case sub judice, the parties do not dispute that at the time of the collision

Lyons was an employee of the Meigs County EMS/Meigs County Commissioners and was

operating the ambulance within the scope of his employment. Further, it is undisputed that Lyons

was responding to or completing an emergency call at the time of the collision, was a validly

---

[6] R.C. 4511.03 imposes a duty upon "[t]he driver of any emergency vehicle or public safety vehicle, when responding to an emergency call, upon approaching a red or stop signal or any stop sign [, to] slow down as necessary for safety to traffic [and to] * * * proceed cautiously past such red or stop sign or signal with due regard for the safety of all persons using the street or highway."

licensed driver, that his operation of the vehicle did not constitute willful misconduct, and that his operation complied with R.C. 4511.03. Therefore, regarding the liability of Meigs County EMS/Meigs County Commissioners, the only issue is whether there is a genuine issue of material fact as to whether Lyons's operation of the ambulance constituted wanton misconduct.

{¶ 20} "Wanton misconduct" has been defined as "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, paragraph three of the syllabus.

{¶ 21} After reviewing the record in the light most favorable to Charles and Eleanor Kearns, we conclude that a genuine issue of material fact remains as to whether Lyons's operation of the ambulance constituted wanton misconduct. Here, the accident reconstruction expert indicated that Lyons was exceeding the posted speed limit by at least 20 miles per hour at the time of the collision. This fact is especially concerning because the collision occurred within the limits of the Village of Cheshire, and while approaching an intersection. Lyons was also operating the ambulance without lights and sirens activated, thus providing no warning to fellow travelers. While Lyons denied that he was in the process of passing the vehicle in front of him, both Charles Kearns and Michelle Folmer asserted that he had passed or was in the process of passing the vehicle in front of him in a clearly established no passing zone. Lyons himself indicated that the collision occurred in a no passing zone. Furthermore, Lyons's own deposition testimony provides little detail of how he ended up in the opposite lane of travel. Under these facts, reasonable minds could conclude that Lyons's operation of the ambulance constituted wanton misconduct. As such, a genuine issue of material fact exists that precludes Meigs County EMS/Meigs County Commissioners from the benefit of the R.C. 2744.02(B)(1)(c) defense.

## C. Lyons

{¶ 22} The appellants also contend that Lyons is entitled to individual immunity under R.C. Chapter 2744. R.C. 2744.03(A) prescribes defenses or immunities that an employee of a political subdivision may assert to establish nonliability in a civil action for damages allegedly caused by an act or omission in connection with a governmental or proprietary function. *Argabrite v. Neer*, --Ohio St.3d--, 2016-Ohio-8374, --N.E.3d--, ¶ 7. Pertinent here, an employee of a political subdivision is immune from liability unless the employee's acts or omissions were "with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" R.C. 2744.03(A)(6)(b).

{¶ 23} In the case sub judice, we have already determined that a genuine issue of material fact exists as to whether Lyons's operation of the ambulance constituted wanton misconduct. Thus, at this time Lyons is not entitled to immunity or summary judgment. The appellants also contend in their appellate brief that Lyons's operation of the ambulance did not constitute reckless misconduct. However, because this issue has yet to be decided by the trial court, we will not address it for the first time on appeal. *Sickles v. Jackson Cty. Hwy. Dept.*, 196 Ohio App.3d 703, 2011-Ohio-6102, 965 N.E.2d 330, ¶ 31 (4th Dist.), citing *Stratford v. Chase Apts. v. Columbus*, 137 Ohio App.3d 29, 33, 738 N.E.2d 20 (10th Dist.2000) (explaining that the appellate court's independent review of a summary judgment decision should not replace the trial court's function of initially determining the proprietary of summary judgment).

## IV. Conclusion

{¶ 24} Having reviewed the arguments, the briefs, and the record in this consolidated appeal, we find that the trial court did not err in concluding that a genuine issue of material fact

remains as to whether Lyons's actions constitute wanton misconduct. Accordingly, the trial court properly denied the appellants' motion for summary judgment and the appellants' sole assignment of error is overruled. The judgment of the trial court is affirmed.

JUDGMENT AFFIRMED.

Harsha, J., dissenting.

{¶ 25} I respectfully dissent from the judgment affirming the denial of appellants' motion for summary judgment based on political-subdivision immunity and referring the immunity issue to be the jury. I reiterate my position that nowithstanding conflicting signals given by the Supreme Court of Ohio, the issue of immunity presents a question of law properly decided prior to trial on summary judgment, not of a question of fact to be decided by a jury. *See Laries v. Athens*, 2015-Ohio-2750, 39 N.E.3d 788, ¶ 40-46 (Harsha, J., concurring).

{¶ 26} In *Conley v. Shearer*, 64 Ohio St.3d 284, 595 N.E.2d 862, the Supreme Court of Ohio rejected a claim that the procedure for filing claims against the state, its officers, and employees violated a plaintiff's right to a trial by jury. The court held that "[t]he question of whether [the defendant] is entitled to immunity as a governmental employee is a question of law for which there is no right to trial." *Id* at 292, 595 N.E.2d 862. In rejecting the claimed right to a jury trial the court decided that immunity presented purely legal questions. The court did so in pronouncing that " '[w]hether immunity may be invoked is a purely legal issue, properly determined by the court prior to trial * * *, and preferably on a motion for summary judgment.' " *Id*., quoting *Roe v. Hamilton Cty. Dept. of Human Serv.*, 53 Ohio App.3d 120, 126, 560 N.E.2d 238 (1st Dist.1988).

{¶ 27} Consistent with the Supreme Court's holding in *Conley*, 64 Ohio St.3d at 292, 595 N.E.2d 862, we have held that "[i]mmunity issues ordinarily present questions of law that an

appellate court reviews independently and without deference to the trial court." *See Pauley v. Circleville*, 2012-Ohio-2378, 971 N.E.2d 410, ¶ 16 (4th Dist.). Questions of law are for the court to decide even if resolving the question requires the court to consider the facts or evidence. *See, e.g., Martin v. Lambert*, 2014-Ohio-715, 8 N.E.3d 1024, ¶ 17 (4th Dist.), quoting *Ruta v. Breckinridge-Remy Co.*, 69 Ohio St.2d 66, 68, 430 N.E.2d 935 (1982) ("Simply because resolution of a question of law involves consideration of the evidence does not mean that the question of law is converted into a question of fact or that a factual issue is raised").

{¶ 28} Following *Conley* the Supreme Court stated in dicta that the issue of whether a political subdivision or its employee was entitled to immunity could potentially raise a genuine issue of material fact precluding summary judgment. *See Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 21; *In re Ohio Political Subdivision Immunity Cases*, 115 Ohio St.3d 448, 2007-Ohio-5252, 875 N.E.2d 912, ¶ 2. The Supreme Court did not overrule *Conley*. In addition, the holdings in these cases were restricted to whether the orders appealed constituted final appealable orders. "If the Supreme Court had intended to overrule *Conley*, and to avoid any confusion on the part of trial and appellate courts, the dicta in *Hubbell* was not the way to do it. In the absence of more explicit guidance on this matter, I continue to believe *Conley* is applicable to questions of political-subdivision immunity in a motion for summary judgment. This is so because, like duty, immunity presents a question about the rules of procedure and public policy. Courts decide the rules under which cases are decided, not juries, regardless of whether such a decision requires consideration of the facts." *Laries* at ¶ 46 (Harsha, J., concurring).

{¶ 29} Rather than deciding the issue of immunity as a matter of law, the trial court instead decided it raised an issue of fact that should be decided by the jury. Based on *Conley*, the

trial court erred in so holding and should have proceeded to decide this legal issue.  Thus, I

would reverse and remand with instructions for the trial court to decide the merits of the issue.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED. Appellants shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J: Concurs in Judgment and Opinion.
Harsha, J.: Dissents with Dissenting Opinion.


For the Court

By:_____
        Marie Hoover, Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**